The Central Railroad and Banking Co. *vs.* Raiford.

1. The statutory diligence required touching the use of the bell or whistle, and touching checking of trains on approaching public crossings, though exacted primarily for the benefit of persons crossing the track and not for those walking along it, yet relatively to the latter as well as the former, a failure to comply with the statute is evidence of negligence to be considered by the jury.

2. Ordinary care by one crossing a railway upon a public crossing, is not the measure of ordinary care for one using the track to walk upon, although at the moment he may be at or on such a crossing. One who undertakes to make a passway of a railroad must use that degree of diligence which every prudent person uses who puts himself unnecessarily in a perilous situation. The evidence in the record strongly indicates that had the injured party come up to this measure of diligence, he could and would have avoided the consequences to himself of the negligence of the company; and a new trial is ordered on this question alone, with direction to render judgment for the amount already assessed, or dismiss the action, according as the finding of another jury may be in the affirmative or the negative touching this one question.

March 18, 1889.

Railroads. Diligence. Negligence. Practice in Supreme Court. Before Judge FORT. Sumter superior court. April adjourned term, 1888.

Robert Raiford sued the railroad company for dam-

ages, alleging in brief, as follows: On September 21st, 1884, in Americus, at a street crossing, through the negligence of its employés, and without fault of plaintiff, a train of defendant ran over him, rendering necessary the amputation of his right hand and most of his right foot, causing him great suffering and the expenditure of $500 for medical aid, and making him a cripple for life. Before this he was an able-bodied and healthy mechanic, 35 years old, and his services were reasonably worth $2 per day, etc. By amendment, it was alleged that defendant was guilty of gross negligence in failing to give signals required by law upon approaching the street crossing, either by ringing the bell or blowing the whistle of the engine; and that when the train approached the crossing, defendant's employés failed to slacken its speed and to have it under control so as to stop; and that by this negligence plaintiff was injured.

The defendant pleaded the general issue. On the trial, the evidence was voluminous and conflicting, but it tends to show, in substance, the following facts: Two freight-trains (or two sections of one train) stopped at Americus and awaited the arrival of a south-bound train, which passed them; and then they moved northward. The plaintiff seems to have been injured by one of these freight-trains; probably the second one. He testified that he was up town until after midnight, and intended to go to Andersonville on the train before day; that he and a companion bought fifteen cents worth of whiskey, went to a well, took a drink and separated; that he then went to the depot, laid down, waked up, went to a house and asked for water, started for the house where he boarded to go to sleep, walking on the track, which was the usual way, and soon afterwards heard the noise of a train at the depot; that he

saw it was a freight-train, and heard it blow two short blows, and it passed him; that he stepped behind it on the track, and looking back, saw another coming; that he thought it had "drilling" to do; that on suddenly seeing a light on the ground about him, he looked back again, and the engine was in four feet of him, that he jumped back to avoid it, but it struck him on the head, making a scalp wound and knocking him down and mashing his hand and foot; that the train was moving pretty fast, but made no signal by blowing or ringing the bell, and did not check speed as it approached the crossing; and that he came near dying from his injuries. He denied that he was drunk during that night, or that he said the next morning he did not know how he was hurt. Others testified that he was not drunk. He further testified that he cried aloud as soon after being hurt as he had sense enough and found his hand mashed off. His other evidence tended to support his allegations, and to corroborate him.

The defendant introduced the engineer and fireman of both trains. Their testimony and that of other witnesses tended to show that the trains arrived on time and the first one left on schedule time, the second one being ten or fifteen minutes later; that on starting, the usual blowing signals were given; that it was a heavy up-grade and the engines were not moving more than four or five miles an hour, and were making a considerable noise puffing and blowing off steam, etc.; that the street crossing over the railroad was a bridge, on approaching which, if the plaintiff was lying or sitting on the track beyond the other side of the bridge, where some of the evidence indicates he was hurt, he could scarcely have been seen by the engineer on account of the shadow, though the engineers testified they were on the lookout; that probably he would have been seen

had he been standing up; that plaintiff appeared to several persons who saw him that night to be drunk or half drunk; that in answer to a question, he said that he did not know how he got upon the railroad track; that the crossing was 500 or more yards from the depot in the direction the trains were moving; that it was 350 to 400 yards from where the first train started (being at the blow-post) to the crossing; and that the second train blew at that post.

The jury found for the plaintiff $1,500. The defendant moved for new trial on the grounds that the verdict was contrary to law and evidence, and because of error in the judge's charge and in his refusal to give certain charges requested by defendant.

The motion was overruled, and defendant excepted.

LAWTON & CUNNINGHAM, LYON & ESTES and E. A. HAWKINS, for plaintiff in error.

GUERRY & SON and B. P. HOLLIS, contra.

BLECKLEY, Chief Justice.

Raiford obtained a verdict for $1,500 damages against the railroad company for a personal injury, and a motion for a new trial by the company was denied. The injury resulted in the loss by Raiford of one hand and part of one foot. We are satisfied that the damages were assessed upon the theory that both parties were negligent. That theory is well warranted by the evidence. The injury occurred at a street crossing, and Raiford was stricken while upon the crossing or very near to it, but he was not using the highway for the purpose of crossing the railroad but was using the track for the purpose of walking along it. It was late at night. He had already passed up the railroad for some

distance, and had stepped off the track to allow a freight-train to pass. He then returned to it and continued to walk along it, although he knew that another freight-train was behind and would probably soon overtake him. The only explanation he gives why he was not looking out, was that he expected that train to "drill" at the station. He says it came upon him unawares, and he did not discover its approach until it was within some four feet. He then attempted to leave the track, but was too late. It struck him and inflicted the injury. Whether he was then upon the crossing or slightly beyond it is uncertain, but in either case there was negligence on the part of the railroad employés, under sections 708, 709 and 710 of the code, in failing to ring the bell and check the train. While these measures of statutory diligence are intended for the protection of persons crossing the track, and not for those walking along the track, yet relatively to the latter, as well as the former, a failure to comply with the statute is evidence of negligence to be considered by the jury. *Georgia Railroad vs. Williams*, 74 *Ga.* 723. Looking at the whole charge of the court, as we find it set out in the record, there was no error committed either in the instructions given, or by refusing to instruct as requested. So far as requests were legal, they were substantially embodied in the main charge.

2. We should affirm the judgment refusing a new trial without hesitation were it not that, according to any view we can possibly adopt with reference to ordinary diligence on the part of Raiford, we are unable to see how it could have failed to protect him against the consequences of the company's negligence. On the part of the company there seems to have been no negligence whatever except in failing to ring the bell and check the train as required by the statute. With knowl-

edge that the train was behind, and was soon to pass along the track, Raiford, while walking along the track in front of it, was bound to come up to that measure of diligence which a prudent person would have exercised for his own safety under like circumstances. He may have exercised that degree of care which such a person would have used in crossing a railroad upon a public crossing, but that would not suffice; for one who walks upon a railway track, using and intending to use, it as a passway, not only at the crossing but on both sides, must, even when at the crossing, be much more on the alert than when he merely attempts to cross from side to side of the railroad. 2 Thomp. on Trials, §1803, citing 55 Ill. 386. The train was a heavy freight-train, going slowly up grade, and it seems to us that if Raiford had given even slight attention to the perils of his situation, he would have discovered the approach of the train in time to protect himself. He must have been not only negligent, but grossly negligent, to have been run down by such a train, under the circumstances. *Central Railroad vs. Smith*, 78 *Ga.* 694. We fully recognize it as a question of fact and not of law, whether by the use of ordinary diligence he could have avoided the consequences to himself of the company's negligence. But it is our duty, on a motion for a new trial which complains that the verdict is contrary to the evidence, to form our own opinions upon such a fact, and where they are so decided as in the present case, it is our duty to give effect to them by ordering a new trial. But we shall confine the new trial to the single question, and direct that such trial be had for the sole purpose of ascertaining by the verdict of another jury whether Raiford could, by the use of ordinary diligence, have avoided the injury. If he could, and the jury so find, we direct that the action be dis-

missed.    If he could not and the jury so find, we direct that judgment be entered up in his favor for the amount assessed by the former jury, to wit, $1,500, with interest thereon from the date of the previous verdict.

Judgment reversed, with direction.